**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WILSON S. SHORES; JAMES R. ABBOTT; J. A. ADCOCK, JR.; BRENDA W. AGEE; HAROLD I. BAILEY; ROGER R. BARE; LAWRENCE C. BERTCH; CARL L. BODDIE; WILLIAM M. CAMERON; FRANCIS P. CLARK; TYRONE J. CONWAY; O. D. COVINGTON; BRUCE H. CRAWFORD; JAMES R. DELPH; LOUIS S. DIMARINO, JR.; BRUCE C. FICHTER; CHARLES V. FOOTE; THOMAS M. FULLER; ROBERT L. GRAWBOWSKI; JOSEPH W. HALLIGAN; CHARLES M. HEISE; MARY G. HERBIN; JOSEPH F. HETMANSKI; KENNETH W. HILLIARD; L. WRIGHT HORNE, III; DAN K. HUSTON; HENRY JANOWITZ; JOHN J. JUREWICZ; ROBERT KANE; PAUL E. LANKFORD; MICHAEL B. LAWRENCE; CHRISTOPHER C. LO; ROBERT E. LUDLOW; WILLIAM A. MAZEIKA; GILBERT W. MCCLEAN; H. I. MEHTA; ERNEST L. NEER; GARY W. NENGEL; RAYMOND ALLEN NESBITT; WADE L. OGBURN; S. C. OLIVER, III; JOHN E. PAYNE; LARRY R. PETERSEK; SONIA G. PETERSEK; LINWOOD B. PURYEAR; WALTER H. REES; MICHAEL J. RUPPERT; RICHARD A. SANDS; EARL S. SAUER;

No. 99-1155

BILL SCHONE; EARL J. SHERWOOD;
LLOYD D. SMITH; BENJAMIN E.
STREAT; JOHN R. TAYLOR; JAMES F.
TEJNECKY; JAMES A. THOMSON,
Plaintiffs-Appellants,

v.

LUCENT TECHNOLOGIES,
INCORPORATED; LUCENT TECHNOLOGIES
MANAGEMENT PENSION PLAN FOR
MANAGEMENT EMPLOYEES,
Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CA-98-300-3)

Argued: October 26, 1999

Decided: January 13, 2000

Before WIDENER and KING, Circuit Judges, and
Jerome B. FRIEDMAN, United States District Judge
for the Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John Bertram Mann, LEVIT, MANN & HALLIGAN,
P.C., Richmond, Virginia, for Appellants. James Patrick McElligott,
Jr., MCGUIRE, WOODS, BATTLE & BOOTHE, L.L.P., Richmond,
Virginia, for Appellees. **ON BRIEF:** James A. Sonne, MCGUIRE,

2

WOODS, BATTLE & BOOTHE, L.L.P., Richmond, Virginia, for
Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

On May 15, 1998, Appellants filed suit alleging that Lucent Tech-
nologies, Inc. ("Lucent") interfered with Appellants' rights under the
Employment Retirement Income Security Act ("ERISA"), 29 U.S.C.
§§ 1001 et seq. An amended complaint was filed on June 18, 1998.
The district court granted Lucent's motion for summary judgment on
all counts and denied Appellants' partial motion for summary judg-
ment. Finding no error in the court's ruling, we affirm.

I.

The facts as stated below are essentially adopted from the district
court's opinion, as the material facts of this case are not in dispute.
The Appellants are fifty-six former management employees who were
previously employed at Lucent's Richmond plant (the"Richmond
Works"). Appellants were at-will employees. The Appellees are the
employer Lucent and the Lucent Technologies Management Pension
Plan for Management Employees (the "Plan").

Lucent decided to sell the Richmond Works in the fall of 1995. On
January 3, 1996, Lucent announced its plans to sell the Richmond
Works before the end of 1996. Lucent sold the Richmond Works to
Circo Craft Technologies, Inc. ("Circo") on November 30, 1996, and
at this time, each Appellant was eligible to retire from Lucent.

Lucent and Circo agreed that the objective of the sale was for Circo
to "retain the assets and the capabilities of the Richmond works,

3

including the people ...." Lucent was prepared to terminate all employees of the Richmond Works on the November 30, 1996 closing date, however, Circo was unable to incorporate all employees into their payroll system immediately. On November 15, 1996, Lucent's employees were notified that they would remain on Lucent's payroll only until December 29, 1996, in order to "ease the transition." Between the November 30, 1996 closing date and the December 29, 1996 termination date, the services of Lucent's employees were contracted to Circo pursuant to a Transition Services Agreement. Lucent's Richmond Works employees were terminated on December 29, 1996 and incorporated into Circo's payroll system on January 2, 1997. As a result of Appellants' termination and their eligibility to the pension plan, Appellants became retirees of Lucent as of December 29, 1996.

Lucent's practice with regard to employees retiring on an individual basis had been to require them to use all accrued vacation days before retiring. Lucent altered this general practice during the involuntary group retirements mandated by the sale of the Richmond Works and notified its employees of this departure well in advance of the actual sale. On February 9, 1996, Lucent informed its employees that "if your employment with Lucent Technologies is terminated between now and December 31, 1996, the company will pay an allowance in lieu of any vacation not taken/sold back." On November 15, 1996, Lucent sent a letter to Appellants stating that they would not be permitted to carry any vacation beyond December 29, 1996. Instead, each Appellant received pay in lieu of any unused vacation time accrued as of December 29, 1996. Therefore, December 29, 1996 was established as each Appellant's effective retirement date from Lucent regardless of their accrued vacation time.

Lucent employees "become eligible for current year vacation on December 31 of the prior year." By terminating Appellants on December 29, 1996 and purchasing their remaining vacation days, Lucent avoided the obligation to provide Appellants with vacation time during the 1997 calendar year.

On July 16, 1997, Lucent's board of directors voted to amend the Plan and award more generous pension benefits. There is no evidence that those involved in the sale of the Richmond Works to Circo knew

4

about the amendment that was subsequently approved. The amendments became effective on January 1, 1998, but applied retroactively to every Lucent employee who retired on or after January 1, 1997. As the Appellants' effective date of retirement was December 29, 1996, they were prevented from receiving the increased pension benefits under the amended Plan. Had the Appellants been credited with their vacation time as Lucent employees, their employment would have been extended beyond January 1, 1997, and they would have been eligible for the increased retirement benefits.

Fifty-one of the Appellants have not used Lucent's claims procedure. Subsequent to the amendment of the Plan, the five remaining Appellants contacted Lucent personnel offices (not the Plan Administrator) about the Plan amendment. Lucent did not initially treat these contacts as claims for benefits. Upon receipt of the forwarded contacts, the Plan Administrator replied by noting that plaintiffs' effective retirement date precluded eligibility for the amended pension benefits. Appellants amended their complaint to include an allegation that Lucent's response was insufficient under ERISA. Upon receipt of the amended complaint, Lucent issued a formal denial letter on August 18, 1998, and notified the five appellants of their right to appeal in accordance with ERISA.

Several provisions of the Plan are relevant to this case. The Plan states that "[a]ll Employees who have reached age 21, and whose Years of Service have been one year or more, shall be participants in the Pension Plan." Some cases require a determination of whether an employee has achieved at least one Year of Service by computing his "Hours of Service" during a particular time period. Neither Hours of Service nor Years of Service is relevant in computing the actual date on which an employee retires, as these are only necessary to determine whether an employee is eligible for pension benefits. The Lucent personnel guide provides that "in all cases, [Lucent] reserves the right to determine an employee's last day on payroll." The personnel guide also states employees may "[r]eceive pay in lieu of unused approved carryover vacation from prior year and current year vacation ...." The Plan requires that employees "[s]end all written claims for pension matters ... to the Pension Plan Administrator." The Plan gives the Employee Benefits Committee, as the Plan Administrator,

5

sole and complete discretion to interpret the Plan and determine benefits.

On January 7, 1999, the district court heard oral argument on the pending motions. In a Memorandum Opinion filed on January 11, 1999, the district court granted Lucent's motion for summary judgment on all counts and denied Appellants' motion for partial summary judgment. This appeal follows.

II.

This Court reviews the district court's grant of summary judgment de novo, employing the same legal standards applied by the district court. See Brogan v. Holland, 105 F.3d 158, 161 (4th Cir. 1997). A court's ability to review a discretionary decision of the administrator of an employee benefits plan is significantly limited. If "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plans," Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989), a reviewing court may reverse the denial of benefits only on a finding of abuse of discretion. See id. at 111; see also Ellis v. Metropolitan Life Insurance Co., 126 F.3d 228, 232 (4th Cir. 1997). Under the abuse of discretion standard, the administrator's decision will not be disturbed if it "`is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" Brogan, 105 F.3d at 161. In the present case, the Plan gives the Employee Benefits Committee, which is appointed by Lucent to administer the Plan, discretion to interpret the Plan and determine benefits under the plan, thus triggering the abuse of discretion standard. **1**

_____

**1** Subsection 3.4 of the Plan expressly gives the Committee, as Plan Administrator, "sole and complete discretionary authority and control to manage the operation and administration of the Plan, including, but not limited to, the determination of all questions relating to eligibility for participation and benefits, interpretation of all Plan provisions, determination of the amount and kind of benefits payable to any participant, spouse or beneficiary, and construction of disputed or doubtful terms. Such decisions shall be conclusive and binding on all parties and not subject to further review."

6

III.

Appellants have appealed the district court's grant of Lucent's motion for summary judgment as to Count I of the amended complaint, in which Appellants argue that their forced retirement on December 29, 1996, violates Section 510 of ERISA which provides that it is "unlawful for any person to discharge ... a participant for the purpose of interfering with the attainment of any right to which such participant becomes entitled under the plan." 29 U.S.C. § 1140. The district court applied the McDonnell Douglas burden of proof scheme as this Court has so instructed in Section 510 cases lacking direct evidence of discriminatory intent. See Conkwright v. Westinghouse Electric Corp., 933 F.2d 231, 239 (4th Cir. 1991). Even on appeal, Appellants have presented no direct evidence of discriminatory intent, so they must establish a prima facie case by proving that they are otherwise eligible for the benefits in question and that they were denied benefits under circumstances that give rise to an inference of discrimination. See Henson v. Liggett Group, Inc., 61 F.3d 270, 277 (4th Cir. 1995) (stating that to establish a prima facie case under ERISA, a claimant must establish that he "is in the protected class, that [he] was qualified for the position [he] sought, and that [he] was not offered the position `under circumstances that give rise to an inference of discrimination'").

It is undisputed that the Appellants are otherwise eligible for the benefits. Appellants argue that the temporal proximity between the forced retirement date of December 29, 1996 and the effective date for increased pension benefits of January 1, 1997 creates an inference of discrimination. The district court noted that"plaintiffs overstate the legal significance of this temporal proximity." The apparent temporal proximity is only the result of "two courtesies extended by Lucent." Firstly, Lucent only extended appellants' employment from November 30, 1996 until December 29, 1996, as an accommodation for the transition to Circo. In addition, the determination to amend the plan was not made until July, 1997, and this change was applied retroactively to the January 1, 1997 date. Appellants had no right to be on the payroll after November 30, 1996, and as observed by the district court, ERISA does not impose liability for the revocation of gratuitous benefits. See Stiltner v. Beretta U.S.A. Corp., 74 F.3d 1473 (4th Cir. 1996). Appellants' only evidence to infer discriminatory intent is

7

this so-called temporal proximity of three days. As such, Appellants have not made out a prima facie case under Section 510.

In addition, even if Appellants have established a prima facie case, under the McDonnell Douglas test, Lucent has offered a legitimate, nondiscriminatory reason for discharge. Lucent asserts that had it allowed Appellants to take vacation time beyond December 29, 1996, it would have been legally obligated to provide five weeks of paid vacation during calendar year 1997 to employees no longer in its service. Appellants have offered no evidence to assert that Lucent's proffered reason for discharge is pretextual. Therefore, we affirm the district court's grant of Lucent's motion for summary judgment as to Count I.

IV.

Count II of the amended complaint alleges that Lucent violated the Plan and its procedures by purchasing, rather than allowing Appellants to use, the vacation days Appellants had accrued on December 29, 1996. Appellants allege that this violates Section 502 of ERISA which provides that "[a] civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan ...." 29 U.S.C. § 1132(a)(1)(B). The district court granted Lucent's motion for summary judgment as to this count based on the plain language of the Plan.

The Supreme Court has determined that "the validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue." Firestone, 489 U.S. at 115. Courts are not at liberty to disregard the plain language of a plan. See Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 57 (4th Cir. 1992). "In resolving claims under [ERISA], a court must follow Congress' command for adherence to the provisions of the written plan - lest ERISA become an administrator's nightmare and a litigator's dream." Id. at 63. The Employee Benefits Committee, appointed by Lucent to administer the plan, has "sole and complete discretionary authority and control to manage the operation and administration of the Plan ...," which includes the sole discretion to interpret provisions of the

8

Plan. Such language reserving the authority to interpret plans to fiduciaries or administrators is permissible, provided that the interpretation is reasonable. See, e.g., Haley v. Paul Revere Life Ins. Co., 77 F.3d 84, 89 (4th Cir. 1996) (holding that "[t]he court must not disturb the administrator's decision if it is reasonable, even if the court itself would have reached a different conclusion"); Nobel v. Vitro Corp., 885 F.2d 1180, 1186-87 (4th Cir. 1989) (holding that language providing that the fiduciary "`determine[s] all benefits and resolve[s] all questions pertaining to administration, interpretation and application of Plan provision'" conferred "`interpretative'" rights on the fiduciary).

As this Plan grants complete discretion to the Committee, the denials of benefits and the interpretation of provisions are reviewed for abuse of discretion. Firestone, 489 U.S. at 115. In determining whether an administrator has abused its discretion, a court should consider the following, to the extent relevant:

> (1) the scope of the discretion conferred; (2) the purpose of the plan provision in which the discretion is granted; (3) any external standard relevant to the exercise of that discretion; (4) the administrator's motives; and (5) any conflict of interest under which the administrator operates in making its decision.

Haley, 77 F.3d at 89 (citing Restatement (Second) of Trusts § 187 cmt. d (1957)). In this case, the designation of December 29, 1996 as Appellants' retirement date is reasonable, and it violates neither the Plan nor Lucent's personnel policies.

Eligibility for pension benefits under the Plan is determined by the termination of an employee's "active service." An employee is "retired from active service if he or she leaves [Lucent] for any reason other than a [Lucent-affiliated] transfer." The Lucent personnel guide states that "in all cases, [Lucent] reserves the right to determine an employee's last day on payroll." Appellants were at-will employees, and they were notified twelve months in advance of the actual sale of Lucent's intent to sell the Richmond Works before the end of 1996. On February 9, 1996, Lucent informed Appellants that the company would pay Appellants for any unused vacation accrued during the cal-

9

endar year, and on November 15, 1996, Lucent informed Appellants that they would not be permitted to carry any vacation beyond December 29, 1996. Accordingly, the requirement to utilize December 29, 1996 as the retirement date was reasonable and was not an abuse of discretion. We therefore affirm the district court's grant of Appellee's motion for summary judgment as to Count II of the Amended Complaint.

V.

For the foregoing reasons, we hold that the district court properly granted summary judgment against appellants on all counts. Accordingly, the judgment of the district court is affirmed.

AFFIRMED